IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-672-BO

| | |
|---|---|
| DUKE UNIVERSITY, <br>     Plaintiff, <br> v. <br> <br> ENDURANCE RISK SOLUTIONS <br> ASSURANCE COMPANY, <br>     Defendant. | ) <br> ) <br> )      O R D E R <br> ) <br> ) <br> ) <br> ) |

This cause comes before the Court on defendant's motion to dismiss all claims pertaining to the underlying *Binotti* claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded, defendant has replied, and a hearing on the matter was held before the undersigned on April 22, 2021, at Elizabeth City, North Carolina. In this posture, the motion is ripe for ruling and, for the reasons that follow, the motion is denied.

BACKGROUND

Plaintiff filed this complaint against its insurer seeking a declaratory judgment that defendant is obligated to cover plaintiff's unreimbursed defense costs related to two civil actions filed in the United States District Court for the Middle District of North Carolina and any liability that arises from the second of those two cases. Plaintiff further asserts claims for breach of contract, breach of the common law duty of good faith and fair dealing, and unfair and deceptive trade practices.

The insurance policy at issue is a Commercial Excess Liability Policy, No. EXC10006230100, issued by defendant to plaintiff for the policy period of January 1, 2015, to January 1, 2016. The policy at issue is part of a program of insurance purchased by plaintiff which

is written in five layers. The primary layer was sold to plaintiff by Westchester Fire Insurance Company (Primary Policy) and each of the excess policies afford coverage under the same terms as the Primary Policy. Defendant's excess policy is the fifth layer of coverage and provides for $25 million above the $55 million provided by the other layers.

The Primary Policy includes two coverage sections: "Insured Persons and Organization" (D&O) as well as "Employment Practices Liability" (EPL). The Primary Policy's D&O section states that "All Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at . . . the time at which the earliest Claim . . . is first made." [DE 1-1 at 41]. Defendant's excess policy, in its Claims Made Coverage Endorsement, provides that it is "subject to the same terms, conditions, definitions and warranties as contained in the" the Primary Policy, but with two exclusions: the Retroactive Date exclusion and the Extended Reporting Period exclusion. [DE 1-1 at 105]. The Retroactive Date exclusion states that defendant's policy "does not apply to any Loss resulting from a Wrongful Act which occurs before the Retroactive Date [January 1, 2015] or after the end of the policy period [January 1, 2016]." *Id.*

On June 9, 2015, a class-action antitrust complaint was filed in the United States District Court for the Middle District of North Carolina alleging that plaintiff and the University of North Carolina at Chapel Hill (UNC) had conspired since at least 2012 to suppress wages for the class, which was comprised of medical faculty, by agreeing not to compete for or "poach" the other school's medical faculty. The named plaintiff, Dr. Danielle Seaman, alleged claims arising out of events which transpired in 2015. The parties to the *Seaman* action eventually settled and the court approved the settlement on September 25, 2019. On May 27, 2020, a second class-action antitrust complaint was filed against plaintiff and UNC by the same class counsel that had prosecuted the

2

*Seaman* action. The second case was filed by named-plaintiff Professor Lucia Binotti and alleged that the same "no poaching" policy that the *Seaman* plaintiffs alleged applied to medical faculty applied to all faculty members at the two schools. The parties to the *Binotti* case have reached a settlement in principle.

Defendant seeks dismissal of plaintiff's claims in this action related to the *Binotti* case. As to plaintiff's breach of contract claim, defendant contends that (1) plaintiff's *Binotti*-based claim was made years after the expiration of the policy period and does not relate back, (2) that the *Binotti* claim would not be covered under the 2015 policy in any event because it results from acts that occurred before the policy's Retroactive Date, and (3) that the *Binotti* claim is not covered under the 2015 policy because it only seeks damages for injuries occurring after January 3, 2016, which is after the end of the policy period. Defendant further argues that plaintiff has failed to state a claim for bad faith and unfair and deceptive trade practices.

## DISCUSSION

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the facts alleged must allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court "need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal alteration and citation omitted). When considering a 12(b)(6) motion, a court may consider exhibits attached to the complaint as well as documents incorporated into the complaint by reference

3

without converting the motion to one for summary judgment. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

In North Carolina,[1] "an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fid. Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380 (1986). It is the insured's burden to show that its claim fits within the policy. *Hobson Const. Co. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 590 (1984). If the insured party satisfies its burden, the burden shifts to the insurer to demonstrate that an exclusion applies. *Id.* Insurance policy provisions that extend coverage are to be liberally construed, while policy provisions that exclude coverage are to be strictly construed. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9-10 (2010).

Defendant's excess policy expressly provides in its Claims Made Coverage Endorsement that it follows the Primary Policy with two exceptions: the Retroactive Date exclusion and the Extended Reporting Period exclusion. By their express terms, neither of these exclusions control whether the *Binotti* claim relates back to the 2015 *Seaman* case. Accordingly, the Primary Policy provisions apply, which specifically state that "All Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at . . . the time at which the earliest Claim . . . is first made." [DE 1-1 at 41]. There is no real dispute that the *Binotti* case is based upon the same or interrelated wrongful acts as those alleged in *Seaman*, and thus the date of the *Binotti* claim relates back to the 2015 *Seaman* complaint.

Defendant contends that a separate provision in its excess policy controls whether plaintiff's *Binotti* claim relates back. This provision states that "This policy will follow form to the

---

[1] There appears to be no dispute that North Carolina law governs this action.

4

terms, conditions, definitions, and exclusions of the 'first underlying insurance' in effect the first day of the Policy Period, except to the extent that the terms, conditions, definitions, and exclusions of this policy differ from the 'first underlying insurance." [DE 1-1 at 108]. The interrelatedness provision of defendant's excess policy states that "All Claims for Damages resulting from a Wrongful Act which are alleged by the same person or organization . . . will be deemed to have been made at the time the first of those Claims is made against any insured." Defendant argues first that its narrower interrelatedness provision applies and second that *Binotti* is not related to *Seaman* under its interrelatedness provision.

Contrary to defendant's argument, however, plaintiff has sufficiently alleged that the Claims Made Coverage Endorsement included in defendant's excess policy expressly and explicitly changed defendant's policy by, among other things, including a broad follow-form clause governing claims-made lawsuits such as *Binotti*. "In the event of conflict with policy language, the language of an endorsement generally prevails." *Harleysville Mut. Ins. Co. v. Reliance Nat. Ins. Co.*, 256 F. Supp. 2d 413, 419 (M.D.N.C. 2002); *see also Anderson v. Cincinnati Ins. Co.*, No. CA 1:12-156-HMH, 2013 WL 445998, at *5 (W.D.N.C. Feb. 5, 2013) ("When an endorsement provision can be construed as in direct conflict with the coverage provisions of the policy, 'the provisions most favorable to the insured ... are controlling.'" (quoting *Carlson v. Old Republic Ins. Co.*, 585 S.E.2d 497, 499 (N.C.Ct.App.2003)). This reading is further consistent with the purpose of follow-form policies, which allow policy holders with multiple insurers of the same risk to "obtain uniform coverage, and to know, without a minute policy-by-policy analysis, the nature and extent of that coverage." *Safety Nat'l Cas. Corp. v. Garlock Sealing Techs. LLC*, No. 317CV00458RJCDSC, 2018 WL 9850040, at *3 (W.D.N.C. Aug. 20, 2018) (quoting *Union Carbide Corp. v. Affiliated FM Ins. Co.*, 16 N.Y.3d 419, 424 (2011)).

5

Defendant next contends that application of the Retroactive Date exclusion bars coverage of the *Binotti* claim. The Retroactive Date exclusion, included in the Claims Made Coverage Endorsement, excludes coverage for any loss which results from a wrongful act that occurs before the Retroactive Date, January 1, 2015. Plaintiff in its complaint has alleged that the *Binotti* complaint was heavily drawn from evidence that the 2015 *Seaman* litigation had uncovered. [DE 1-1] Compl. ¶ 46. Plaintiff has further alleged that the *Seaman* complaint was based upon allegations that plaintiff and UNC had engaged in a conspiracy to suppress wages over a period of time and which was discovered by Dr. Seaman in 2015. *Id.* ¶ 25.

As plaintiff correctly argues, the Retroactive Date exclusion by its plain terms does not exclude coverage for a loss which occurred in part by acts occurring prior to 2015 and in part by acts which occurred during the policy period. To the extent there is any ambiguity in the exclusion, it will be construed against the insurer and in favor of the insured. *Harleysville Mut. Ins. Co.*, 364 N.C. at 9.[2] Additionally, the Court may consider defendant's course of conduct in construing the terms of the contract. *See Davis v. McRee*, 299 N.C. 498, 502 (1980). Plaintiff has alleged that it kept defendant involved in the *Seaman* suit and that defendant consented to the settlement of the *Seaman* case, committing to pay any defense costs that reached its layer. Compl. ¶¶ 33-35. As defendant has argued, the *Seaman* case and the *Binotti* case both allege the same antitrust conspiracy which was formed in some part prior to the Retroactive Date. Despite this, defendant did not contend that the Retroactive Date exclusion would bar the *Seaman* claim. This certainly suggests that the Retroactive Date should not operate to bar the *Binotti* claim, which, as discussed above, is interrelated to the *Seaman* claim.

---

[2] A policy provision is ambiguous if the court finds it to be "fairly and reasonably susceptible to multiple constructions". *Id.* at 10.

6

Defendant's third argument contends that the *Binotti* claim is not covered under the 2015 policy because it only seeks damages for injuries occurring after January 3, 2016, which is after the end of the policy period. The relevant policy language in the Claims Made Coverage Endorsement states as follows: "This Insurance does not apply to any Loss resulting from a Wrongful Act which occurs . . . after the end of the policy period." [DE 1-1 at 105]. Defendant's argument is based upon an order entered in the *Binotti* case which limited recovery to damages incurred after January 3, 2016. [DE 8-3]. Importantly, damages and wrongful acts are not the same thing, the express language of the policy bars coverage for losses resulting from *acts* which occur outside the coverage period. Additionally, the *Binotti* court recognized that damages after January 3, 2016, may be the result of acts that took place during 2015. *Id.*

In sum, plaintiff has sufficiently pleaded its breach of contract claim related to the *Binotti* claim. In light of the foregoing, defendant's argument that the Court should also dismiss plaintiff's tagalong claims for bad faith and unfair and deceptive trade practices because defendant's disclaimer of coverage for the *Binotti* claim was correct fails. Additionally, a bad faith claim may proceed even where it is determined that the underlying contract was not breached. *Robinson v. N. Carolina Farm Bureau Ins. Co.*, 86 N.C. App. 44, 49 (1987). And while the mere breach of contract, even if intentional, "is not sufficiently unfair or deceptive to sustain an action under the UTPA", *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (quoting *Branch Banking & Trust,* 107 N.C. App. at 61-62), where a breach of contract claim is "surrounded by substantial aggravating circumstances" will it support an unfair and deceptive trade practice claim. *Griffith v. Glen Wood Co., Inc.*, 184 N.C. App. 206, 217 (2007).

Plaintiff has sufficiently alleged its extracontractual claims, *see Compl.* ¶¶ 98—100, 106—110, and the request to dismiss them is denied.

## CONCLUSION

Accordingly, for the foregoing reasons, defendant's motion to dismiss [DE 7] is DENIED.

SO ORDERED, this __7__ day of June, 2021.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE