# Appendix Exhibit E

Case 5:20-cv-00672-BO    Document 104-3    Filed 01/28/22    Page 1 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

DUKE UNIVERSITY

    Plaintiff,

      v.

ENDURANCE RISK SOLUTIONS
ASSURANCE COMPANY

    Defendant.

Case No. 5:20-cv-00672-BO

**DECLARATION OF R. BRYAN TILDEN IN SUPPORT OF PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, R. Bryan Tilden, pursuant to 28 U.S.C. § 1746, hereby declare and state as follows:

1.    I am R. Bryan Tilden, and have been retained by Covington & Burling LLP, counsel to Duke University, to serve as a claims handling expert in connection with this litigation. Specifically, I have been engaged to analyze whether Endurance Risk Solutions Assurance Company ("Endurance") followed the custom and practice of the insurance industry in its handling of Duke's claim for coverage for loss arising from *Seaman v. Duke Univ., et al.,* M.D.N.C. No. 1:15-cv-462 and *Binotti v. Duke Univ.,* M.D.N.C. No. 1:20-cv-470.

2.    I submit this Declaration in support of Duke's Brief in Opposition to Endurance's Motion for Summary Judgment. Unless stated otherwise, the facts set forth herein are true to the best of my personal knowledge, and if called as a witness, I could competently testify as to these matters in my capacity.

3.    I have over 47 years of experience in the insurance and risk management industry as an author, agent, broker, consultant, underwriter, drafter of policy forms and endorsements, teacher, historian, claim examiner, and consultant for both policyholders and insurers. As a broker representing policyholders, I have placed accounts in the international insurance market, including coordinated placements with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British, and European insurance companies. I have worked with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British, Bermudian, and

European companies in the drafting, underwriting, and placement of insurance policies marine and non-marine, and the adjustment of property and liability losses. I also teach the construction, drafting, underwriting, adjusting, and analysis of insurance policies throughout the United States, Canada, Mexico, the Caribbean, Bermuda, and the European Union. I am not an attorney.

4. I was also an employee of the Independent Insurance Agents of North Carolina, Inc. ("IIANC"), and served as the Director of Education and Director of Technical Affairs during my tenure there. I worked, before joining IIANC and also as a staff member of IIANC, with the North Carolina Department of Insurance ("NCDOI") and the North Carolina Legislature in helping promulgate and implement the North Carolina Pre-Licensing programs for insurance agents and Continuing Education for insurance agents and adjusters. After these programs were statutorily and administratively authorized, I worked with the NCDOI on the content outline for testing of agents and adjusters, developed exam questions, and sat on the cut score committee to validate the licensing exams.

5. In connection with my role as an expert in this litigation, I have reviewed what Endurance has identified as its produced claims file. In reviewing that file, I did not see any documentation of a coverage evaluation or analysis made by an Endurance adjuster regarding *Seaman*, which I would have expected to see from an insurer following standard industry custom and practice, particularly if such insurer believed there was an issue regarding coverage.

6. I also observed several other factors exemplifying a departure by Endurance from commercially acceptable standards, custom, and practice for claims handling, including without limitation: (i) shifting coverage positions reflecting a prejudicial pre-disposition to avoid payment rather than to find coverage where available; (ii) misstatements regarding applicable insurance policy provisions (including misstatements regarding the amount of underlying limits and the applicable coverage part of the policy applicable to *Seaman* and *Binotti*); (iii) deficient recordkeeping and apparent adjustment errors flowing from that deficient recordkeeping; (iv) improper and irrelevant references to the wealth of the policyholder; and (v) other conduct inconsistent with the best interests of the policyholder. These opinions are more

2

fully set forth in my expert report, which I prepared in connection with this litigation and a copy of which has been provided to Endurance.

7. As evidence of this departure from commercially acceptable claims handling standards, Endurance misstated key insurance policy provisions regarding the coverage part of the primary policy applicable to *Seaman* and *Binotti* and the amount of underlying limits. Specifically, in its March 3, 2020 letter to Duke, Endurance's counsel provided a coverage analysis under, and invoked exclusions as potential grounds to deny coverage found in, the employment practices liability (EPL) portion of the primary policy, even though Endurance and Duke's other insurers had for the prior two or more years handled *Seaman* under the Directors & Officers (D&O) portion of the primary policy. Further, in the same March 3, 2020 letter to Duke, Endurance stated that the Endurance policy had an attachment point of $95 million, when in fact the proper attachment point for D&O claims under the Endurance policy is $55 million. In the custom and practice of the industry, an insurer is expected to accurately represent applicable insurance coverage terms and conditions to its policyholder.

*     *     *     *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_R. Bryan Tilden_
R. Bryan Tilden
CPCU, CLU, ARM, ALCM, ChFC, CIC

Date: January 28, 2022

3