IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-672-BO

| | |
|---|---|
| DUKE UNIVERSITY, <br> Plaintiff, <br> v. <br><br> ENDURANCE RISK SOLUTIONS <br> ASSURANCE COMPANY, <br> Defendant. | ) <br> ) <br> )     O R D E R <br> ) <br> ) <br> ) <br> ) |

This cause comes before the Court on plaintiff's motion for partial summary judgment [DE 72], defendant's motion for summary judgment [DE 81], and the parties' motions to seal [DE 96 & 99]. The appropriate responses and replies have been filed, or the time for doing so has expired, and the matters are ripe for ruling. For the reasons that follow, plaintiff's motion for partial summary judgment is granted, defendant's motion for summary judgment is denied, and the motions to seal are granted.

## BACKGROUND

Procedural history

Plaintiff Duke University ("Duke") commenced this action by filing a complaint in Wake County, North Carolina Superior Court on November 13, 2020. [DE 1-1]. On December 14, 2020, defendant Endurance Risk Solutions Assurance Company ("Endurance") removed the action to this Court on the basis of its diversity jurisdiction. [DE 1]. In its complaint, Duke alleges claims against Endurance for declaratory relief, breach of contract, bad faith refusal to settle coverage claim, and unfair and deceptive trade practices under North Carolina law.

Endurance moved to dismiss Duke's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE 7]. That motion was denied by order entered June 8, 2021. [DE 34]. Endurance sought a certificate of appealability [DE 35], which was denied. [DE 60]. Endurance then sought reconsideration of the Court's order denying its motion to dismiss, [DE 61], which was also denied. [DE 113]. Both parties have now filed motions pursuant to Rule 56 of the Federal Rules of Civil Procedure. Duke seeks entry of partial summary judgment in its favor and asks the Court to hold that (1) the $55 million underlying exhaustion requirement necessary to trigger coverage under the 2015 excess insurance policy issued by Endurance as a result of payments by the insurers underlying the Endurance Policy in connection with *Seaman v. Duke University*, No. 1:15-cv-462 (M.D.N.C.) has been satisfied; (2) *Seaman* and *Binotti v. Duke University*, No. 1:20-cv-470 (M.D.N.C.), both fall within the coverage of the Endurance Policy, with *Seaman* as a claim made during the 2015 policy period and *Binotti* as a claim which relates back to the *Seaman* claim; and (3) the retroactive date exclusion in the Endurance Policy does not bar coverage either in whole or in part for Duke's claim.

Endurance has also moved for summary judgment in its favor, asking the Court to find that there is no genuine issue of material fact and to hold as a matter of law that Duke has no claim against Endurance under the Endurance Policy for coverage with respect to either the *Seaman* or *Binotti* actions. Endurance contends summary judgment is appropriate in its favor for four reasons: (1) covered losses from *Seaman* did not exceed the $1 million self-insured retention and $55 million of limits of liability underlying the Endurance Policy; (2) *Binotti* was not a claim first made or deemed first made during the Endurance Policy period; (3) coverage for the *Seaman* and *Binotti* claims are precluded entirely by the Endurance Policy's 1 January 2015 retroactive date, and (4) even if some portion of the claims is covered notwithstanding the retroactive date, an allocation

2

would be required and the total amount allocated to covered loss for *Seaman* and *Binotti* would be less than the $55 million limits of liability in the Endurance Policy. Endurance further contends that Duke has no claim against it for breach of contract, "bad faith," or unfair and deceptive trade practices, and that Endurance is entitled to judgment in its favor on all claims.

Statement of the facts

As the matter is before the Court on cross-motions for summary judgment, the Court derives the facts of the case from the parties' statements of undisputed material facts, provided pursuant to Local Civil Rule 56.1, and the responses thereto. [DE 74, 87, 103, 110, 114, 115].

A. *The insurance policies*[1]

For the policy period beginning 1 January 2015 through 1 January 2016, Duke purchased an $80 million insurance program, which includes a management liability program consisting of five layers of coverage. The primary-layer policy, issued to Duke by Westchester Fire Insurance Company ("Westchester"), insures Duke for up to $10 million in coverage, in excess of a $1 million self-insured retention. Three additional insurers sold Duke the next layers of coverage, which together provide for an additional $45 million in coverage. Endurance sold Duke the top layer excess policy in the program, which covers a final $25 million above the $55 million provided by the underlying layers.

Each of the four excess policies are "follow form" policies to the Westchester Policy, subject to any stated exceptions. The Westchester Policy's "Insured Persons and Organization" coverage section, at issue here, provides in pertinent part as follows:

> The Insurer shall pay the Loss of the Organization which the Organization becomes legally obligated to pay by reason of a Claim first made against the Organization during the Policy Period or, if applicable, the Extended Period, and reported to the Insurer pursuant to section E.1 herein, for any Wrongful Act taking place prior to the end of the Policy Period.

---

[1] The relevant policies are undisputed as written.

3

[DE 75-3 p. 22].[2] The Westchester Policy defines "claim" to include both "a written demand against any Insured for monetary damages or non-monetary or injunctive relief" and "a civil proceeding against any Insured . . . commenced by the service of a complaint or similar pleading[.]" *Id.* The Westchester Policy further provides coverage for multiple claims arising out of the same or interrelated wrongful acts, which are deemed to constitute a single claim and are "deemed to have been made at the earliest of the following times" to include "the time at which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Act is first made". *Id.* p. 30. "Interrelated Wrongful Acts" are defined by the Westchester Policy as "all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes." *Id.* p. 24. A Wrongful Act is defined to include "any actual or alleged error, omission, misleading statement, misstatement, neglect, [or] breach of duty[.]" *Id.* p. 26. The Westchester Policy further expressly covers anti-trust claims and provides that

> After satisfaction of the applicable retention, the Insureds shall bear uninsured and at their own risk 20% of all Loss incurred in a Claim alleging or arising out of an Anti-Trust Claim, and the Insurer's liability hereunder shall apply only to the remaining 80% of such Loss.

*Id.* p. 57.

The Endurance Policy, 2015 Endurance Commercial Excess Policy, No. EXC10006230100, provides for $25 million in excess of the underlying insurance policies in Duke's coverage program. The Endurance Policy is triggered once $55 million of underlying limits of insurance are exhausted. The Endurance Policy also follows form to the Westchester Policy, "except to the extent that the terms, conditions, definitions, and exclusions of this policy differ

---

[2] The Court's citations reference the CM/ECF docket and page number.

from" the Westchester Policy. [DE 84-2 p. 24] (emphasis in original). In the claims made coverage endorsement at issue herein, the Endurance Policy provides:

### I. COVERAGE - CLAIMS MADE

It is agreed that the insurance afforded by this policy is subject to the same terms, conditions, definitions, exclusions and warranties as contained in the claims made policy(ies) described in the Schedule of Underlying Insurance and/or Item III below.

The foregoing shall not apply to:

    1. The Retroactive Date of the underlying claims made policy(ies).

    2. The Extended Reporting Period of the underlying claims made policy(ies).

### II. RETROACTIVE DATE

The Retroactive Date for this Policy is January 01, 2015
(In the absence of an entry, the **Retroactive Date** will be the date this policy takes effect.)

This Insurance does not apply to any Loss resulting from a Wrongful Act which occurs before the Retroactive Date or after the end of the policy period.

### III. CLAIMS MADE CLAUSE

This policy shall apply to Claims first made against you and reported to us during the policy period for which coverage is provided for in the following described underlying claims made policy(ies)

| INSURANCE COMPANY | POLICY NUMBER |
|---|---|
| Westchester Fire Insurance Company | Policy Number On File with Company |

All Claims for Damages resulting from a Wrongful Act which are alleged by the same person or organization, including Damages claimed by any person or organization for Loss resulting at any time from a Wrongful Act, will be deemed to have been made at the time the first of those Claims is made against any insured.

*Id.* p. 21.

The Endurance Policy requires the insured, Duke, to maintain the underlying insurance policies in full force and effect and further provides that coverage under the Policy "will not apply unless and until the insured or the insured's underlying insurance is obligated to pay the full amount of the underlying limits of insurance." *Id.* p. 25 (internal quotation marks omitted).

B. *The lawsuits*

1. *The* Seaman *suit*

On June 9, 2015, a lawsuit was filed in the United States District Court for the Middle District of North Carolina against Duke arising out of an alleged "no poach" agreement between Duke and the University of North Carolina (UNC). The suit was filed by a member of Duke's medical faculty, Danielle Seaman, by and through her counsel, Dean Harvey with Lieff Cabraser Heiman & Bernstein, LLP, on behalf of herself and all others similar situated. The complaint alleged a claim for violation of the Sherman Act and a claim for unfair and deceptive trade practices under North Carolina law, contending that the "no poach" agreement suppressed both the wages and mobility of the plaintiff and the putative class members.

In June 2015, Duke's broker reported the *Seaman* claim to the relevant liability insurers, including Endurance. Endurance initially advised Duke's broker that it would close its file related to the *Seaman* claim because indications suggested the loss should not reach Endurance's layer of coverage; after class was certified in the *Seaman* suit, Endurance reopened its file and began communicating with Duke and Duke's counsel. Duke kept Westchester updated on the *Seaman* litigation from the outset, and beginning in December 2017, Duke began keeping all insurers in its coverage program, including Endurance, regularly updated. The parties to the *Seaman* suit eventually sought to resolve the matter through mediation, and Duke sought consent or approval from Endurance before it made settlement offers; Endurance, through its claims handler, did not

6

object to various settlement offers that Duke made and did not dispute coverage or reserve any specific defenses to coverage for the *Seaman* suit. The parties agreed in principle to a settlement amount of $54.5 million on 13 March 2019 following an in-person mediation in which Endurance participated. That settlement was approved by the court on September 24, 2019. *Seaman* class counsel was awarded approximately 40% of the 54.5 settlement in fees and costs. Duke contends that it incurred at least $15,360,258.17 in attorney fees, costs, and expenses.

The first four layers of Duke's coverage program paid their policy limits in full toward the *Seaman* loss. Endurance acknowledges that the first four layers paid their limits, but disputes that they paid for a covered loss. Between February 2015 and February 2020, Endurance did not dispute coverage for the *Seaman* claim or contest the payment decisions of any of the underlying layers of insurance. For example, in July 2019, Duke contacted Endurance and informed it that while it was not certain that the *Seaman* costs would reach the Endurance layer, Duke wanted to be sure Endurance was aware of the possibility; Endurance responded that it was aware that some expenses would need to be paid. *See* [DE 85 p. 2]. Duke updated Endurance throughout 2019 on the status of the underlying coverage and in February 2020 notified Endurance that each of the underlying layers of coverage had paid their policy limits and that Endurance would need to pay residual *Seaman* related defense costs, which at the time was estimated to be in the five figures.

In May 2020, for the first time, Endurance requested copies of all of defense invoices related to the *Seaman* litigation, which Duke provided. Duke contends that the amount of *Seaman* defense costs which reach into Endurance's layer of coverage is at least $88,206.54, a fact which Endurance disputes.

2. *The* Binotti *suit*

In December 2019, Attorney Harvey with Lieff Cabraser advised Duke that his firm intended to bring a second action against Duke, and Duke received a draft copy of the complaint in early January 2020. The second case alleged the same "no-poach" conspiracy between Duke and UNC and named Professor Lucia Binotti as plaintiff. Duke provided Endurance with copies of the draft complaint on January 9, 2020. On May 27, 2020, the *Binotti* action was filed in the Middle District of North Carolina. The *Binotti* complaint also alleged Sherman Act violations and restraints on trade, naming as a putative class all faculty members of Duke and UNC at a time to be determined through February 5, 2018. The *Binotti* complaint identified the discovery made public in the *Seaman* action as the basis for understanding the "no-poach" agreement.

The *Binotti* court, on a motion by Duke, dismissed as time-barred any claims for damages and injuries arising before January 3, 2016, on a finding that the complaint had failed to adequately allege fraudulent concealment, but allowed the remaining claims to proceed. In December 2020, the parties to the *Binotti* case settled. A $19 million settlement was approved by the Court on August 30, 2021. Class counsel, Lieff Cabraser attorneys and others, were awarded $4.75 million in attorney fees and $125,201.41 in costs and expenses. This amount was paid out of the $19 million settlement.

In a letter dated March 3, 2020, Endurance reserved its rights regarding the *Binotti* claim, but did not disclaim coverage. On May 15, 2020, Endurance notified Duke that it would not commit to fund Duke's ongoing *Binotti* litigation costs and further suggested that residual losses under *Seaman* may not be covered. Endurance later notified Duke by letter dated May 21, 2020, that it believed that no coverage for either *Seaman* or *Binotti* would be available. Duke has advanced the $19 million *Binotti* settlement and more than $500,000 in *Binotti* settlement costs

8

that Endurance has not paid. Endurance has not extended coverage or reimbursement regarding any *Seaman* or *Binotti* related loss.

DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or

9

whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

Duke's motion for partial summary judgment

As discussed above, Duke seeks only partial summary judgment with regard to three issues arising from its breach of insurance contract claim.

Disputes regarding insurance coverage may be appropriate for summary judgment where the issue is whether the events as alleged are covered by the applicable policies. *N. Carolina Farm Bureau Mut. Ins. Co., Inc. v. Martin by & through Martin*, 376 N.C. 280, 285 (2020). Under North Carolina law, "[t]he party seeking coverage under an insurance policy bears the burden to allege and prove coverage." *Id.* (internal quotation and citation omitted). The burden of demonstrating that an exclusion in the policy applies lies with the insurer. *Allstate Ins. Co. v. Lahoud*, 167 N.C. App. 205, 208 (2004). "The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." *Allstate Ins. Co. v. Runyon Chatterton*, 135 N.C. App. 92, 94 (1999).

A. *Whether the underlying policy limits have been exhausted*

Duke first seeks partial summary judgment on the issue of exhaustion of the underlying policy limits. It is undisputed that the underlying carriers have paid out their policy limits in full. As part of its argument that the underlying limits have not been exhausted and that any loss has not reached Endurance's layer, Endurance contends that the underlying carriers' decisions to pay or to not dispute coverage for Duke's *Seaman*-based costs was incorrect. While the Court is unaware of any binding decisions on the issue, it appears that the weight of the case law holds that "an excess insurer may not challenge the underlying insurers' payment decisions in order to argue that their policy limits were not (or should not have been) exhausted ... unless there is an indication

10

that the payments were motivated by fraud or bad faith." *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 845 (9th Cir. 2020) (citation omitted).

North Carolina law requires courts to construe the language of insurance policies broadly and in favor of coverage. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9 (2010). Moreover, a court must "construe and enforce insurance policies as written, without rewriting the contract" to include any additional exclusions or limitations on coverage. *Fid. Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380 (1986).

Endurance has identified no controlling case which holds that it may challenge the decision of the underlying insurers to pay their policy limits when deciding whether the limits have been exhausted, nor has it identified any provision of the Endurance Policy which would permit it to second-guess the decisions of the underlying layers to pay the limits of their policies. Endurance has also not raised any argument that the payments by the underlying carriers were part of a fraud or made in bad faith. Accordingly, whether the underlying layers were correct to cover the *Seaman* loss or not, Endurance may not now challenge their decision to pay the policy limit in order to argue that the underlying policies have not been exhausted.

The parties further disagree as to how to calculate the amount paid to determine whether the $55 million threshold triggering Endurance's policy has been reached. Because the undisputed record demonstrates that the underlying policy limits have been paid in full, which is alone sufficient to trigger the Endurance Policy pursuant to its terms, the Court need not address this argument in determining that Duke is entitled to a holding that the Endurance Policy has attached. However, Endurance has further not rebutted Duke's summary judgment argument on this issue.

The Westchester Policy provides that

> The liability of the Insurer shall apply only to that part of Loss which is excess of the Retention amount applicable to this Coverage Section, as shown in Item C of the

11

> Declarations. Such Retention shall be borne uninsured by the Insureds and at their own risk.

[DE 75-3 p. 3249 § D. 1]. The Westchester Policy further provides that, for Anti-Trust coverage,

> After satisfaction of the applicable retention, the Insureds shall bear uninsured and at their own risk 20% of all Loss incurred in a Claim alleging or arising out of an Anti-Trust Claim, and the Insurer's liability hereunder shall apply only to the remaining 80% of such Loss.

*Id.* p. 3277 § A. 7]. Contrary to Endurance's argument, nothing in the policy language suggests or requires that the loss claimed by Duke in the *Seaman* action, $69,860,258.17, should be reduced by 20% *before* application of the self-insured retention amount of $1 million. Endurance contends that black-letter law requires this result, but it has failed to cite any case so holding. Applying the self-insured retention to the total amount and then applying the 20% reduction results in more than $55 million in loss, and thus the underlying limits have been exhausted and Endurance's layer has been reached.

B. *Whether* Seaman *and* Binotti *are covered under the 2015 insurance program*

Duke next seeks summary judgment on the issue of whether *Seaman* and *Binotti* are covered under the 2015 claims made program of insurance. In opposition to Duke's motion, Endurance does not argue that *Seaman* does not fall within the Endurance's coverage layer in the 2015 insurance program. Duke has established that *Binotti* is covered under the 2015 claims made program of insurance as well.

Endurance's policy follows form to the Westchester Policy. The Westchester Policy provides that "All Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at . . . the time at which the earliest Claim . . . is first made." [DE 73-1 p. 3250 § D.3.a.]. It is undisputed that the *Binotti* antitrust claims arise out of the same and interrelated wrongful acts as those which formed the basis of the *Seaman* claim.

This Court held at the pleading stage that Endurance's arguments that the Westchester Policy's relation-back clause does not apply fail. *See* [DE 34 p. 4-5]. At the summary judgment stage, Endurance has not advanced any new argument or evidence which would support a different reading of the policies. Additionally, to the extent there is any ambiguity in the reference to or application of the terms in Item III of the claims made coverage endorsement, such ambiguity must be construed against the insurer and in favor of coverage. *See Harleysville Mut. Ins. Co.*, 364 N.C. at 9; *Anderson v. Cincinnati Ins. Co.*, No. CA 1:12-156-HMH, 2013 WL 445998, at *5 (W.D.N.C. Feb. 5, 2013) ("When an endorsement provision can be construed as in direct conflict with the coverage provisions of the policy, 'the provisions most favorable to the insured ... are controlling.'") (citation omitted). Accordingly, and for those additional reasons outlined at [DE 73 pp. 15-18], the Court holds that the *Binotti* claim relates back to the *Seaman* claim, and that both are therefore covered under the 2015 claims made insurance program.

C. *Whether the retroactive date applies to exclude coverage*

Having determined that the claims fall within the 2015 claims made insurance program, the Court need next determine whether the retroactive date exclusion applies.

The Endurance Policy provides an express exclusion for "any Loss resulting from a Wrongful Act which occurs before the Retroactive Date [January 1, 2015] or after the end of the policy period [January 1, 2016]." [DE 84-2 p. 21]. In the *Seaman* complaint, Seaman alleges that in 2015, while a Duke employee, she expressed interest in applying for an advertised position at UNC. [DE 75-12 ¶ 54]. She was told that UNC was prohibited from hiring her pursuant to what became known as the no-poach agreement between the UNC and Duke. *Id.* ¶¶ 55; 57. Seaman's anti-trust suit was filed on June 9, 2015.

13

While the *Seaman* complaint also alleges wrongful acts which occurred prior to 2015, there is no express exclusion in the Endurance Policy for claims which are based upon acts which occur both before and during the policy period. Indeed, Endurance could have prohibited claims based on a continuing course of conduct or drafted the exclusion more broadly, but it chose not to. And, as any ambiguity is construed in favor of coverage, Endurance's arguments that the retroactive date exclusion applies fail. *See also Minnesota Laws. Mut., Ins. Co. v. Protostorm, LLC*, 197 F. Supp. 3d 876, 885 n.12 (E.D. Va. 2016).

Additionally, the Court may also rely on Endurance's course of conduct in order to properly construe the terms of the policy which are ambiguous. *Davis v. McRee*, 299 N.C. 498, 502 (1980); *Bicket v. McLean Sec., Inc.*, 138 N.C. App. 353, 362 (2000). The record evidence demonstrates that Endurance did not invoke or suggest that the retroactive date exclusion would bar coverage for any part of the *Seaman* claim from 2015 through 2019. Information regarding the no-poach policy and its inception would have been available to Endurance during that time, but the correspondence between Endurance and Duke does not reveal that Endurance would contend that the retroactive date exclusion barred coverage. Rather, Endurance stated it understood it would need fund *Seaman* defense costs that reached its layer. *See* [DE 78 pp. 20]; *see also id.* p. 23; [DE 85].

Endurance does not contest the facts relied upon by Duke to show that its course of conduct supports Duke's interpretation of the retroactive exclusion, but rather responds to Duke's proffer of uncontested facts by stating that the documents relied upon by Duke speak for themselves. Endurance also relies on correspondence containing reservations of rights which occurred after the relevant time period, and thus have no bearing on Endurance's course of conduct at issue. This is insufficient at this stage to create a genuine issue of material fact.

14

Finally, Endurance has not demonstrated that coverage should be allocated as between portions of the claim which fall within the coverage period and portions of the claim which fall outside the coverage period. The retroactive date exclusion does not suggest or contemplate the allocation of claims. Again, allocation is something that Endurance could have included it its insurance policy but did not. *See, e.g., Fid. Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380 (1986) (court has duty to interpret contract as written without rewriting or disregarding express provisions).

In sum, Duke has demonstrated that the retroactive date exclusion does not apply to bar coverage for the *Seaman* and related *Binotti* claims in whole or in part. Duke is therefore entitled to summary judgment in its favor on each of the foregoing issues.

Endurance's motion for summary judgment

While the Court considers each summary judgment motion separately, in light of the foregoing, Endurance's request for summary judgment in its favor on Duke's breach of insurance contract claim must be denied.

Endurance contends that it is entitled to summary judgment in its favor on Duke's bad faith refusal to settle and unfair and deceptive trade practices claims because, at bottom, it has the right under the policy to withhold payment until the amount of covered loss is determined in this case.

"[U]nder some circumstances [North Carolina] law permits the recovery of punitive damages on claims for a tortious, bad faith refusal to settle under an insurance policy, even [where] the refusal to settle is also a breach of contract." *Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387, 395 (1985). Indeed, where an insurer eventually pays under the policy, a bad faith claim may lie where there is a delay and aggravating conduct. *Robinson v. N. Carolina Farm Bureau Ins. Co.*, 86 N.C. App. 44, 50 (1987).

15

In order to recover for "the tort of an insurance company's bad faith refusal to settle, the plaintiff must prove (1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct." *Lovell v. Nationwide Mut. Ins. Co.*, 108 N.C. App. 416, 420 (1993). "[B]ad faith means not based on honest disagreement or innocent mistake." *Id.* at 421 (quotations omitted) (citing *Dailey*, 75 N.C. App. at 396). "Aggravated conduct may be shown by fraud, malice, gross negligence, insult, rudeness, oppression, or wanton and reckless disregard of plaintiff's rights." *Lovell*, 108 N.C. App. at 422. And, where a breach of contract claim is "surrounded by substantial aggravating circumstances" it will support an unfair and deceptive trade practice claim. *Griffith v. Glen Wood Co., Inc.*, 184 N.C. App. 206, 217 (N.C. App. 2007).

Viewing the facts in the record in the light most favorable to Duke, the Court concludes that there is a genuine issue of material fact as to whether Endurance's decision in the spring of 2020 to assert that neither the *Seaman* nor *Binotti* claims were covered under its policy amounted not to an honest disagreement and was further attended by a reckless disregard for Duke's rights or substantial aggravating factors. The extra-contractual claims will therefore be considered by the jury.

Motions to seal

Where a party seeks to seal documents filed in connection with summary judgment, the "more rigorous" First Amendment standard applies. *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004). Under this standard, a court "may restrict access only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Id.* at 575 (internal quotation and citation omitted).

The documents which the parties seek to seal contain settlement negotiations and proposals as well as materials which are confidential as between the parties and confidential business

16

information. Redacted records have been filed where possible, and there are no adequate alternatives to sealing the identified documents. The motions to seal are therefore GRANTED.

## CONCLUSION

Accordingly, for the foregoing reasons, Duke's motion for partial summary judgment [DE 72] is GRANTED and Endurance's motion for summary judgment [DE 81] is DENIED. The motions to seal [DE 96 & 99] are GRANTED.

This matter is hereby REFERRED to United States Magistrate Judge Meyers to conduct a pretrial conference on the issues and claims which remain for trial.

SO ORDERED, this **22** day of August 2022.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE